**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 13-cv-0251-WJM-MJW

15 CORPORATIONS, INC., and
ALAN DEATLEY, and individual,

      Plaintiffs,

v.

DENVER PROSECUTOR'S OFFICE,
CITY OF DENVER, COUNTY OF DENVER,
KANDACE C. GERDES, an individual,
JOSEPH MORALES, an individual,
WILLIAM M. RITTER, an individual,
ROBERT L. MCGAHEY, JR., an individual,
JOHN W. MADDEN, IV, an individual, and
DOES 1-100

      Defendants.

---

## ORDER GRANTING MOTIONS TO DISMISS

---

      Plaintiffs 15 Corporations, Inc. and Alan Deatley ("Plaintiffs") bring this action against Defendants Denver Prosecutor's Office, City and County of Denver, Kandace C. Gerdes, Joseph Morales (collectively "Denver Defendants"), as well as William Ritter, Robert McGahey, and John Madden (collectively "State Defendants").  Plaintiffs allege that the Denver and State Defendants violated their Fifth and Fourteenth Amendment rights, as well as 26 U.S.C. § 6103 and Colo. Rev. Stat. § 39-21-113.  (Am. Compl. (ECF No. 7) pp. 11-17.)

      Before the Court are the following motions: (1) Denver Defendants' Motion to Dismiss (ECF No. 12); and (2) State Defendants' Motion to Dismiss (ECF No. 21).  For

the reasons set forth below, the Motions are granted.

## I.  LEGAL STANDARD

Defendants move to dismiss Plaintiffs' claims for both lack of jurisdiction pursuant to Fed. Rule Civ. P. 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).  The legal standard governing each aspect of the Motions is set forth below.

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case.  Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking."  *See id.*

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however, the court may consider matters outside the pleadings without transforming the motion into one for summary judgment.  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  Where a party challenges the facts upon which subject

matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." In evaluating such a motion, a court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

## II.  FACTUAL BACKGROUND

The following facts come from Plaintiffs' Amended Complaint and are accepted as true for purposes of the instant Motions.

Plaintiff Alan Deatly is an individual who has an ownership interest in Plaintiff 15

3

Corporations, Inc.  (Am. Compl. ¶¶ 1-2.)  Defendants Kandace Gerdes and Joseph

Morales are prosecutors with the Office of the Denver Prosecuting Attorney, which is a

political subdivision of the City and County of Denver.  (*Id*. ¶¶ 4-9.)  Defendant Steven

Bratten is an investigator employed by the Colorado Department of Revenue.  (*Id*. ¶

17.)  Defendants Robert McGahey and John Madden are Colorado state court judges.[1]

(*Id*. ¶¶ 31 & 52.)

At some unknown time and by some "unknown means", Bratten obtained

approximately 296 state and federal income tax returns from Plaintiffs, their business

entities, their family members, and their purchasers.  (*Id*. ¶¶ 17-22.)  Bratten distributed

this tax information to Gerdes and Morales, as well as other employees of the Office of

the Denver Prosecuting Attorney.  (*Id*. ¶ 23.)  This tax information was used to "link

parties together and to develop their presentation and theories for presentation to the

grand jury."  (*Id*. ¶ 25.)

In 2009 or 2010, the Office of the Denver Prosecuting Attorney empaneled a

grand jury to investigate allegations that Plaintiffs and other entities were misusing

Colorado's conservation easement tax credits.  (Am. Compl. ¶ 16.)  Bratten testified

before the grand jury.  (*Id*. ¶ 24.)  In support of the state's case, Bratten disclosed the

tax information to the grand jury.  (*Id*. ¶ 20.)  After the grand jury returned an indictment

---

[1] The Amended Complaint also names Former Governor Bill Ritter as a Defendant. (Am. Compl. ¶ 10.)  However, Governor Ritter has never made an appearance in this case, and Plaintiffs have neither shown that they have served Governor Ritter nor moved for default against him.  Accordingly, the Court presumes that it does not have jurisdiction over Governor Ritter and will dismiss the claim against him without prejudice. *See Okla. Radio Assocs. v. F.D.I.C.*, 969 F.2d 940, 943 (10th Cir. 1992) (court lacks personal jurisdiction over a party where there is no indication that the party has been served with process).

against Plaintiffs, the tax information was disclosed to Plaintiffs' defense counsel during the discovery process.  (*Id*. ¶ 28.)

Upon learning of this alleged misuse of their tax information, Plaintiffs alerted the judicial officers presiding over the criminal action, Judges Madden and McGahey.  (*Id*. ¶ 29.)  After they were alerted to the issue, neither judge made any attempt to stop the use of Plaintiffs' tax information.  (*Id*. ¶ 30.)  At some point, Judge Madden ordered the prosecution team to disclose tax information, without considering the privacy limitations outlined in Colo. Rev. Stat. § 39-21-113 or 26 U.S.C. § 6103.  (*Id*. ¶ 31.)

Based on these facts, Plaintiffs bring the following claims: Count I — violation of 26 U.S.C. § 6103; Counts II & III — violation of Due Process of Law under the Fifth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983; Count IV — violation of the Fifth Amendment's Takings Clause pursuant to 42 U.S.C. § 1983; and Count V — violation of Colo. Rev. Stat. § 39-21-113.  (Am. Compl. pp. 11-17.)  Plaintiffs seek prospective injunctive relief, damages for the constitutional violations, and reasonable attorneys' fees and costs.  (*Id*. at 18.)  In lieu of an answer, Defendants filed the instant Motions to Dismiss.  (ECF Nos. 12 & 21.)  The case has been stayed since the filing of the Motions; no scheduling order has entered and no discovery has been exchanged. (ECF No. 24.)

### III.  ANALYSIS

Defendants move to dismiss all of Plaintiffs' claims on a variety of grounds, each of which will be discussed in turn below.

**A.      Request for Prospective Injunctive Relief**

Defendants move to dismiss Plaintiffs' claims for prospective injunctive relief

under the doctrine of *Younger* abstention.  (ECF No. 12 at 8-9.)   In *Younger v. Harris*,

401 U.S. 37 (1971), the Supreme Court ruled that a district court's injunction of a

pending state court criminal prosecution violated "the national policy forbidding federal

courts to stay or enjoin pending state court proceedings except under special

circumstances."  401 U.S. at 41.  The Supreme Court has established a threefold

analysis for questions of abstention under *Younger*.  A federal district court must

abstain if (1) there is an ongoing state judicial proceeding (2) which implicates important

state interests and (3) in which there is an adequate opportunity to raise constitutional

challenges. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S.

423, 431-32 (1982).

Applying the *Younger* test to this case, it is clear that the Court must dismiss the

claims for injunctive relief.  It is undisputed that Plaintiffs are defendants in an active

state court criminal prosecution.  In fact, the injunctive relief that Plaintiffs seek is to

enjoin use of evidence against them in those proceedings.  (Am. Compl. p. 18.)  The

subject matter of that state court action is Plaintiffs' use of conservation easement

credits, a process that was created by the Colorado state legislature.  Therefore, the

ongoing criminal action undisputedly involves important state interests.  *See Kingston v.

Utah Cnty.*, 161 F.3d 17 (10th Cir. 1998) ("There can be no question that enforcement

of a state [criminal] statute is an important state interest for *Younger* doctrine

purposes.").

The only prong of the *Younger* test which Plaintiffs appear to dispute is whether they have an adequate opportunity to raise in the state court case the claims at issue here.  Plaintiffs point out that most of their causes of action in this case involve violations of federal statutes and the United States Constitution.  (ECF No. 20 at 7.) Plaintiffs argue that *Younger* applies only when a party raises a state court claim in federal court, and that it does not apply to a situation, like this case, in which a plaintiff seeks to vindicate federally-created rights.  (*Id*.)

Notably, Plaintiffs cite no authority supporting their contention that *Younger* does not apply when federal causes of action are raised.  In fact, "[o]ne of the fundamental policies underlying the *Younger* doctrine is the recognition that state courts are fully competent to decide federal constitutional questions."  *Trans Shuttle, Inc. v. Pub. Utils. Comm'n*, 24 F. App'x 856, 859 (10th Cir. 2001) (citing *Middlesex Cnty.*, 457 U.S. at 431).  In many cases, the Tenth Circuit states that the third prong of the *Younger* test is that there be "an adequate opportunity to raise federal claims in the state proceedings." *See*, *e.g.*, *Seneca-Cayuga Tribe of Okla. v. State of Okla.*, 874 F.2d 709, 711 (10th Cir. 1989).  Therefore, it is quite clear that *Younger* applies where the three prongs of the test are satisfied, regardless of whether the claims brought in the federal court case arise under state or federal law.

Plaintiffs make no attempt to show how the claims raised here—even those brought under federal law—cannot be addressed by the Colorado state courts in the ongoing criminal action.  As such, the Court finds that all three prongs of the test for *Younger* abstention have been satisfied, and that the Court must dismiss Plaintiffs'

claims seeking prospective injunctive relief.  *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 n.22 (1976) (if three prongs of *Younger* are met, district court has "no discretion to grant injunctive relief.").

**B.    Monetary Relief**

Plaintiffs seek monetary damages for "violating Plaintiffs' rights under federal statute".  (Am. Compl. p. 18.)  Defendants move to dismiss Plaintiffs' claims for monetary relief and argue that the state agencies are immune under the Eleventh Amendment and that the individuals have absolute prosecutorial or judicial immunity. (ECF No. 12 at 4-5; ECF No. 21 at 5-7.)

1.    Eleventh Amendment Immunity

The Eleventh Amendment bars a suit for damages in federal court against a state, its agencies, and its officers acting in their official capacities.  *See* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.").

Plaintiffs' Amended Complaint alleges that the Office of the Denver Prosecuting Attorney is a "political subdivision of the Office of the City Attorney for the City of Denver."  (Am. Compl. ¶ 4.)  It also alleges that the City of Denver and Denver County are "political subdivision[s] of the state of Colorado".  (*Id*. ¶¶ 5-6.)  Therefore, it appears undisputed that these Defendants are subdivisions of the state.[2]  As such, any claim

---

[2]  To the extent these entities are not subdivisions of the State of Colorado, Plaintiffs have failed to state a claim against either the City or County of Denver under any of their theories.  The Amended Complaint lacks any details as to how any City or County policy or procedure violated Plaintiffs' constitutional rights.  The Amended Complaint also fails to allege

against these entities for monetary damages is barred by the Eleventh Amendment.
*See also Rozek v. Topolnicki*, 865 F.2d 1154, 1158 (10th Cir. 1989) (holding that a
Colorado district attorney's office is immune under the Eleventh Amendment).

Accordingly, Defendants' Motions to Dismiss are granted to the extent Plaintiffs
seek monetary damages from the Office of the Denver Prosecuting Attorney or the City
and County of Denver.

2.     Judicial Immunity

Defendants Madden and McGahey are two of the judicial officers that have
presided over portions of the ongoing state court criminal action brought against
Plaintiffs.  (Am. Compl. p. 4.)  These Defendants move to dismiss all claims against
them under the doctrine of judicial immunity.  (ECF No. 21 at 6-7.)

It is well-established that where a judicial officer is named as a defendant in an
action under 42 U.S.C. § 1983, he or she is immune from civil liability even when the
challenged actions are committed maliciously or in excess of their jurisdiction.  *Stump v.
Sparkman*, 435 U.S. 349, 356 (1978).  A judicial officer is only liable when he or she
acts in the "clear absence of all jurisdiction."  *Id*.  The Supreme Court has recognized
that "[f]ew doctrines were more solidly established at common law than the immunity of
judges from liability for damages for acts committed within their judicial jurisdiction."
*Pierson v. Ray*, 386 U.S. 547, 554 (1967), *overruled in part on other grounds by Harlow
v. Fitzgerald*, 457 U.S. 800 (1082).

---

any facts showing that the City and County were involved in any other violation of state or
federal law.

> This immunity applies even when the judge is accused of acting maliciously and corruptly, and it "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or correction. . . . We do not believe that this settled principle of law was abolished by § 1983, which make liable "every person" who under color of law deprives another person of his civil rights.

*Id*. (internal citations omitted).

Plaintiffs argue that, despite this well-settled law, Defendants Madden and McGahey are not entitled to judicial immunity because neither 26 U.S.C. § 6103 nor § 7431 specifically excludes judges from its reach.  (ECF No. 30 at 4.)  This argument is preposterous on its face.  No federal statute needs to specifically exclude judges in order for a judge to be entitled to judicial immunity.  Plaintiffs make no argument that Defendants Madden and McGahey acted outside of their authority or went beyond their jurisdiction.  As such, Defendants Madden and McGahey are entitled to judicial immunity from Plaintiffs' claims against them.

3.   Prosecutorial Immunity

Defendants Gerdes and Morales are the prosecutors on the state court case. (*Id*.)  These Defendants move to dismiss the claims brought against them under the doctrine of prosecutorial immunity.  (ECF No. 12 at 5-6.)

State prosecutors are entitled to absolute immunity against suit for activities "intimately associated with the judicial process."  *Imbler v. Pachtman*, 424 U.S. 409,

430-31 (1976).  Such activities include "initiating and pursuing criminal prosecutions."

*Gagan v. Norton*, 35 F.3d 1473, 1475 (10th Cir. 1994).  All of Plaintiffs' allegations

against Gerdes and Morales involve actions taken in furtherance of the ongoing state

court criminal prosecution.  These actions include presenting tax return information to

the grand jury, sharing that information with other prosecutors, and sharing that

information with Plaintiffs' defense counsel in the criminal action.  (Am. Compl. ¶¶ 24-

29.)

Plaintiffs argue that Gerdes and Morales are not entitled to immunity because

their actions violated federal laws.  (ECF No. 20 at 4-5.)  Plaintiffs contend "[a]bsolute

immunity means immunity for those actions that are not in conflict with federal or state

statutes or judicially recognized exceptions to such immunity."  (*Id*. at 5.)  However, this

shows a fundamental misunderstanding of the concept of prosecutorial immunity.  In

*Imbler v. Pachtman*, 424 U.S. 409 (1976), the Supreme Court considered the public

policy implications of absolute prosecutorial immunity and recognized that such

immunity "leave[s] the genuinely wronged defendant without civil redress against a

prosecutor whose malicious or dishonest action deprives him of liberty."  *Id*. at 427.

Despite this, the Supreme Court held that "the alternative of qualifying a prosecutor's

immunity would disserve the greater public interest."  *Id*.  The Supreme Court

concluded that prosecutors are absolutely immune from suits brought under § 1983 for

activities that are an integral part of the judicial process.  *Id*. at 430.  Because Plaintiffs'

claims against Gerdes and Morales involve only actions taken as part of the judicial

process, these Defendants are immune from suit.

4.   Investigatory and Testimonial Immunity

Defendant Steve Bratten is an investigator for the Colorado Department of Revenue and is the individual who acquired and reviewed Plaintiffs' income tax statements in conjunction with the ongoing state court criminal prosecution.  (Am. Compl. pp. 3-4.)  Bratten also testified before the grand jury that returned the indictment that initiated those proceedings.  (*Id*. at 4.)

Trial witnesses in criminal proceedings are entitled to absolute immunity from subsequent civil liability for their trial testimony.  *Briscoe v. LaHue*, 460 U.S. 325, 345-46 (1983).  This immunity extends to proceedings before the grand jury.  *See Anthony v. Baker*, 955 F.2d 1395, 1400 (10th Cir. 1992) (holding that grand jury proceeding is integral to judicial phase of criminal process and therefore witnesses are entitled to absolute immunity); *see also Grant v. Hollenbach*, 870 F.2d 1135, 1139 (6th Cir. 1989) (holding that grand jury witnesses are absolutely immune from civil liability for their grand jury testimony); *Kincaid v. Eberle*, 712 F.2d 1023, 1024 (7th Cir. 1983) (stating that argument for absolute immunity is stronger in grand jury setting than in trial setting because false testimony before grand jury is less harmful than false testimony at trial).  Thus, Bratten is entitled to immunity against any claims related to his testimony before the grand jury.

With regard to Bratten's investigation and acquisition of Plaintiffs' tax information, Defendants move to dismiss Plaintiffs' claims based on investigatory immunity.  (ECF No. 21 at 6-7.)  However, the cases cited in support of this contention involve testimony, and not investigation.  The Court has been unable to locate any support for the

contention that an agent investigating a potential crime is entitled to absolute immunity

for the actions taken in conjunction with that investigation.  As the party claiming

immunity, Bratten bears the burden of establishing that he is entitled to the same.  *See*

*Burns v. Reed*, 500 U.S. 478, 486 (1991).  The Court finds that Bratten has failed to

meet his burden of showing that he is entitled to immunity for his investigatory

functions.

**C.     Failure to State a Claim**

Given all of the above, the only claims remaining are Plaintiffs' claims against

Bratten related to his investigation, including the acquisition of Plaintiffs' tax information.

These claims are brought pursuant to 26 U.S.C. § 6103 and 42 U.S.C. § 1983.  (Am.

Compl. pp. 11-12.)  Bratten has moved to dismiss these claims for failure to state a

claim upon which relief could be granted.  (ECF No. 21 at 8.)

1.     26 U.S.C. § 6103

Plaintiffs claim that Bratten illegally received, used, disclosed, and transferred

their confidential taxpayer information in violation of 26 U.S.C. § 6103.  Section 6103

"lays down a general rule that 'returns' and 'return information' as defined therein shall

be confidential."  *Church of Scientology of Cali. v. Internal Revenue Serv.*, 484 U.S. 9,

10 (1987).  Section 6103 sets forth a general rule subject to numerous exceptions:

> (a) General Rule.—Returns and return information shall be
> confidential, and except as authorized by this title—
>
> > (1) no officer or employee of the United States,
>
> * * * * * *
>
> > shall disclose any return or return information
> > obtained by him in any manner in connection with his service

> as such an officer or an employee or otherwise or under the
> provisions of this section. For purposes of this subsection,
> the term "officer or employee" includes a former officer or
> employee.

Section 7431 provides taxpayers with civil remedies for disclosures in violation of

§ 6103:

> If any officer or employee of the United States knowingly, or
> by reason of negligence, discloses any return or return
> information with respect to a taxpayer in violation of any
> provision of section 6103, such taxpayer may bring a civil
> action for damages against the United States in a district
> court of the United States.

26 U.S.C. § 7431.

In order to recover under § 7431 for a violation of § 6103, a taxpayer must show

that:  (1) the disclosure was unauthorized; (2) the disclosure was made "knowingly or by

reason of negligence"; and (3) the disclosure violated § 6103.  *Fostvedt v. United

States*, 824 F. Supp. 978, 983 (D. Colo. 1993); *Flippo v. United States*, 670 F. Supp.

638, 641 (W.D.N.C. 1987).  Defendants argue that Plaintiffs' Amended Complaint fails

to allege sufficient facts to satisfy each of these elements.  (ECF No. 12.)

Because the Court finds that Plaintiffs have failed to satisfy the third element, it

will address only this point.  Courts have routinely required a party alleging a violation of

§ 6103 to specify what information was revealed, to whom, and under what

circumstances.  *See*, *e.g.*, *Fostvedt*, 824 F. Supp. at 985 (collecting cases).  "[T]o be

'return information' any information must first be 'received by, recorded by, prepared by,

furnished to, or collected by' the IRS."  *Baskin v. United States*, 135 F.3d 338, 342 (5th

Cir. 1998) (quoting 26 U.S.C. § 6103(b)(2)).  Therefore, "section 6103 requires that the

source of the disclosed information must have been the IRS in order for there to be a

14

violation of the general prohibition against the disclosure of return information."  *Id*.; *see also Johnson v. Sawyer*, 120 F.3d 1307, 1323 (5th Cir. 1997) (a violation of § 6103 depends on the source of the information); *Ryan v. United States*, 74 F.3d 1161, 1163 (11th Cir. 1996) ("Section 6103 of Title 26 protects only information filed with and disclosed by the IRS, not all information relating to any tax matter."); *Stokwitz v. United States*, 931 F.2d 893, 896 (9th Cir. 1987) (holding that Section 6103 "is concerned solely with the flow of tax data to, from, or through the IRS.").

In this case, Plaintiffs' Amended Complaint fails to allege any facts related to the source of the confidential tax information.  In fact, the Amended Complaint states only that Bratten "in his individual capacity, acquired approximately 296 tax returns" through "unknown means".  (Am. Compl. ¶ 17.)  Because Plaintiffs have failed to allege that the tax information acquired and distributed by Bratten came from the IRS, they have failed to state a claim for violation of 26 U.S.C. §§ 6103 or 7431.

Additionally, there is an exception to the general rule against disclosure which permits use of confidential tax information during a judicial or administrative proceeding if the taxpayer is a party to the proceeding or if the proceeding arose out of the taxpayer's civil or criminal tax liability.  *See* 28 U.S.C. § 6103(h)(4)(A).  Plaintiffs allege that Bratten received confidential tax information and then distributed it to the Denver Office of District Attorney, where it was used "in developing the case against DeAtley." (Am. Compl. ¶ 19.)  The only persons alleged to have received the confidential tax information from Bratten are members of the prosecution team, who then presented the tax information to the grand jury.  (*Id*. ¶¶ 23-26.)  Even assuming that Bratten obtained

the tax information from the IRS—which is not alleged here—his distribution of such

information to prosecutors and the grand jury during a criminal tax proceeding against

Plaintiffs does not violate § 6103.  Accordingly, for this additional reason, Plaintiffs have

failed to state a claim for damages under § 7431.

     2.   <u>42 U.S.C. § 1983</u>

Plaintiffs allege that Bratten engaged in an unlawful taking of their property by

improperly gaining access to Plaintiffs' federal tax returns and using that information in

the ongoing state prosecution, including presentation to the grand jury.[3]  (Am. Compl.

¶¶ 61-70.)

Defendant Bratten moves to dismiss Plaintiffs' takings claim on the basis of

ripeness.  (ECF No. 12[4] at 19-20.)   The Supreme Court has held that a claim under the

Takings Clause of the Fifth Amendment is not ripe until two conditions have been

satisfied.  First, it is necessary that "the government entity charged with implementing

the [challenged] regulations has reached a final decision regarding the application of

the regulations to the property at issue."  *Williamson Cnty. Reg'l Planning Comm'n v.*

*Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985).  Second, the plaintiff must

---

[3] In Count II of the Amended Complaint, Plaintiffs allege that Bratten violated their Fifth and Fourteenth Amendment Due Process rights by improperly gaining access to Plaintiffs' federal tax return information, distributing such information to prosecutors, and then using such information during his testimony before the grand jury.  (Am. Compl. ¶¶ 48-55.)  However, in their Response to the Motions, Plaintiffs state that they are only seeking prospective injunctive relief on this claim, and are not seeking monetary damages.  (ECF No. 20 at 12.)  Because the Court has already held that it cannot exercise jurisdiction over Plaintiffs' claims for prospective injunctive relief, it need not address whether Count II states a claim upon which relief could be granted.

[4] Defendant Bratten has incorporated arguments made by the County Defendants as to whether Plaintiffs have stated a claim for a violation of 42 U.S.C. § 1983.  (ECF No. 21 at 5.)  Therefore, the Court will cite to the County Defendants' Motion in this section of the Order.

have sought just compensation through the available state procedures and been denied relief.  *Id*. at 194-95.

Putting aside the first requirement, Plaintiffs here have utterly failed to address the second prong.  There is no allegation that Plaintiffs have requested compensation from the government or that such requests have been denied.  (Am. Compl. ¶¶ 61-70.) Instead, Plaintiffs allege that they "should not be expected to wait several years to seek damages when the action leading to the taking has been completed and there is absolutely no possibility that the state would offer compensation in the interim."  (ECF No. 20 at 13.)  Plaintiffs appear to be attempting (without any citation to authority or analysis of the issue) to invoke the futility exception to the exhaustion requirements.  In order to satisfy the futility exception to the exhaustion doctrine, a plaintiff must establish that "it is certain that [his] claim will be denied on appeal, not merely that [he] doubts that an appeal will result in a different decision."  *Rando v. Standard Ins. Co.*, 1999 WL 317497, at *4 (10th Cir. May 20, 1999) (quoting *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996)).  Supposition that a claim for compensation will be denied is not enough, there must be a "clear and positive showing of futility."  *Id*.; *see also Getting v. Fortis Benefits Ins. Co.*, 5 F. App'x 833 (10th Cir. 2001) (conclusory statement that appeal would have been futile not sufficient to excuse exhaustion of administrative remedies).

Plaintiffs have failed to make the requisite showing of futility.  The Amended Complaint contains no facts regarding futility and the briefing on the Motions contains only a conclusory allegation that any claim for compensation would inevitably be

denied.  This is insufficient to meet Plaintiffs' burden.  *See Forteleny v. Liberty Life Assur. Co. of Boston*, 790 F. Supp. 2d 1322, 1358 (W.D. Okla. 2011) ("[P]laintiffs' bare allegations of futility are not sufficient to support a conclusion that exhaustion of administrative remedies is not warranted.").

The Takings Clause "does not proscribe the taking of property; it proscribes taking without just compensation."  *Williamson*, 473 U.S. at 194.  As the Tenth Circuit has held, "[t]here is no violation of the Clause unless compensation is denied."  *Schanzenbach v. Town of LaBarge*, 706 F.3d 1277, 1282 (10th Cir. 2013).  Because Plaintiffs have failed to show that they engaged in any attempts to exhaust their takings clause claim, the Court lacks subject matter jurisdiction and this claim must be dismissed.  *See Kelly v. Wilson*, 426 F. App'x 1213, 1216 (10th Cir. 2011) (when a plaintiff fails to exhaust, claim must be dismissed without prejudice).

**D.   Colorado State Law Claim**

Though the issue has not been raised by any party, the Court has an independent duty to examine its jurisdiction at every stage of the litigation.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  This case was brought in this Court because Counts I-IV[5] were causes of action arising under federal law.[6]  (Am. Compl. p.

---

[5]  The Court notes that there are two Count IVs in the Amended Complaint.  For purposes of clarity, the Court will refer to the second Count IV, which alleges a violation of Colo. Rev. Stat. § 39-21-113, as Count V or the "State Law" claim.

[6]  Though it appears that the parties may be diverse, *see* Am. Compl. ¶¶ 1-13, the Amended Complaint does not allege that jurisdiction is this Court is based on 28 U.S.C. § 1332. Additionally, there are no facts regarding the amount in controversy.  As such, Plaintiffs have failed to meet their burden of establishing jurisdiction under 28 U.S.C. § 1332.  *See Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (party invoking jurisdiction bears burden of proving that such jurisdiction exists).

5.)  Because the Court had original jurisdiction over these Counts, it had supplemental jurisdiction over Count V.  *See* 28 U.S.C. § 1367.  The Court has now dismissed Counts I-IV in their entirety.  Plaintiffs' remaining claim is brought pursuant to Colo. Rev. Stat. § 39-21-113, and therefore firmly grounded in state law.  A federal court does not have independent jurisdiction over state law claims unless those state law claims "turn on substantial questions of federal law."  *Grable & Sons Metal Products, Inc. v. Darue*, 545 U.S. 308, 312 (2005).  As Count V arises out of a state statute, it does not turn on a substantial question of federal law.

Federal supplemental subject matter jurisdiction over state law claims "is extended at the discretion of the court and is not a plaintiff's right."  *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims."  *Carnegie-Mellon Univ.*, 484 U.S. at 350.  In the interest of comity and federalism, district courts are advised against making "needless decisions of state law."  *TV Commc'ns Network, Inc.*, 964 F.2d at 1028.  If federal claims are dismissed before trial, leaving only issues of state law, the federal district court should ordinarily decline to exercise supplemental jurisdiction by dismissing the case without prejudice.  *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (citing *Carnegie-Mellon Univ.*, 484 U.S. at 350).

The instant suit is in the very early stages; no scheduling order has been entered and discovery has not commenced.  (ECF No. 24.)  Therefore, issues of judicial economy and fairness are not implicated here.  *See Carnegie-Mellon Univ.,* 484 U.S. at 350.  Rather, the issues of comity and federalism are at the forefront, because the Court would have to apply and interpret a state statute if it continued to exercise jurisdiction over Plaintiffs' remaining claim.  *See McWilliams v. Jefferson Cnty.,* 463 F.3d 1113, 1117 (10th Cir. 2006).  "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."  *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).  Thus, there is no compelling reason to maintain jurisdiction over this suit.

Given the above, the Court has little difficulty concluding that Count V would be better addressed in state court.  *See Gaenzle*, 614 F.3d at 1229; *TV Commc'ns Network, Inc.*, 964 F.2d at 1028; *Thatcher Enters.*, 902 F.2d at 1478.  Accordingly, the Court declines to exercise its supplemental jurisdiction over Count V and will dismiss that claim without prejudice.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     The Denver Defendants' Motion to Dismiss (ECF No. 12) is GRANTED in so far as it seeks dismissal of all claims, but denied to the extent it seeks dismissal with prejudice;

2.     The State Defendants' Motion to Dismiss (ECF No. 21) is GRANTED;

20

3.      **All claims** in Plaintiffs' Amended Complaint are DISMISSED WITHOUT

PREJUDICE.  The Clerk shall close the case.

Dated this 25th day of October, 2013.

BY THE COURT:

_____
William J. Martinez
United States District Judge